May it please the court. Good morning, Your Honors. Eric Guzman on behalf of Mr. Solano. I will watch my own clock and attempt to reserve two minutes for rebuttal. This case boils down to whether or not a conviction under California's rape statute of 261A2 categorically qualifies as an aggravated felony, either as rape, as covered by the INA in 1101A43A, or as a crime of violence under subsection F of that statute. Could I ask you to start with crime of violence? Because I was struck by our decision in Sandoval, Oriana, which analyzed 289A1. And it seemed and held it was a crime of violence. And it seemed that the statute and the statute in this case, 261A2, were virtually identical. So why aren't we bound by Sandoval, Oriana? Thank you. So that opinion, and I know Judge Hurwitz was on that decision. I didn't know that. What? No, go ahead. A couple of things. First was that case held that it didn't qualify under 18UC16A, and they relied on the catch-all provision of 16B. Secondly, in that case, the court faulted defense counsel for failing to provide an example of when that crime could be committed in a nonviolent manner. And there, Sandoval, Oriana, cited to Duenas-Alvarez, we can't, as a court, hypothesize a fantasy version of this crime where there's no violence. And as I cited to the briefs of that case, in my reply brief, defense counsel, in fact, did not cite a single case where that crime was committed in a nonviolent way. So you've cited a couple of cases, but we're looking at the ordinary case. And Sandoval, Oriana, provides a great deal of reasoning as to why sexual penetration is a crime of violence and has that potential risk. So it was hard, given, again, the lack of empirical data, and you cited, I think, three cases where it was done without violence. It was hard for me to understand why we weren't just bound by how we would distinguish Sandoval, Oriana, and its reasoning. Well, I think it's distinguishing that Mr. Esolano provided those examples where it's done in a nonviolent way. Well, but we knew in the other case that there were examples in which it could be done in a nonviolent way. The question is, I think, still, and I'm not sure I've heard an answer, why in the ordinary case isn't this a violent crime? Well, I want to answer that in two ways. One, I think because this crime, 261A2, can be committed by duress, you have to consider the ordinary rape by duress case. Right, that's what I'm asking. Okay, and I think the ordinary rape by duress is inherently nonphysically violent because the defendant, in that case, is sought out to commit that crime by a nonphysical, nonviolent way, by some type of psychological coercion. Well, but is the ordinary duress case a psychological coercion case? I mean, again, isn't the ordinary, to me, the ordinary duress case, in my mind, is somebody with a pistol or some weapon saying, submit or I will do violence to you. That's duress. Psychological duress strikes me as an exceedingly rare type of rape. Well, I believe if it was rape by threatening of a pistol, that would be rape by threat of force. And the California Supreme Court said these are two separate elements. So you think duress is always psychological duress? Well, that's the primary example the California courts give. It's psychological coercion. It's not physical because otherwise the force of physical fear. If somebody says, submit or I will hurt your children, is that duress? I think that would be rape by threat of force because the California statute covers duress to a third party. So your view is that duress is only some form of psychological duress? I think it's threats of public humiliation, threats of economic harm, threats of, you know. And then you've still got to convince us that the ordinary case of rape is a psychological duress case, don't you? Well. Because if this is only a rare occurrence and most of the time the statute covers stuff that would be a crime of violence, don't you lose? I'm sorry, could you re-ask the question? Well, you have a statute that you say isn't categorically violent because it can be done by duress. And then you say the ordinary case of duress doesn't involve violence. And my question is, do we look at the ordinary case of duress or do we look at the ordinary case of violation of the statute? Well, a couple of things. First, I'd like to – Yes or no? Do we – because I think it's important. Do we look at the ordinary case of rape by duress or do we look at the ordinary case of rape involving all the other types of ways it can be done in the statute? I think you have to look at all the elements, all the possibilities of the way that crime is typically committed. So then why is the ordinary case of rape not one that involves violence? I want to say that the ordinary case of rape as a whole, but rape by duress. Well, so that's a different answer than the one you just gave me. In other words, you think we have to focus on the ordinary case of rape by duress. I think Taylor instructs the court to look at the versions of the crime that could be committed elementally that would be outside the federal definition. But then we have to decide whether or not that's the ordinary type of crime, don't we? Are we looking at – is your argument that each of those different methods that rape could be accomplished against a person's will is a divisible offense? Yes. So that we could apply the modified categorical approach on each of those? Definitely. So accomplished against a person's will by means of force of violence is one offense and against a person's will by duress is a different offense? Correct. So that if somebody uses a pistol, he's only in threat of violence side, not the duress side? Correct. What California case do you cite for that? Well, People v. Serrano, a California case I cited in my brief, spells out the different ways you can commit the crime. And they said – in that case, the defendant said, well, I didn't do anything physically violent. I didn't threaten her with force. I shouldn't be convicted. They said, no, force is one way you can commit the crime. Another way is by duress. Otherwise, that second variety would be redundant. Look, if this is a divisible offense, then under discounts, wouldn't we look at the charging documents to see what your client was charged with? So here was he used an ax, right? So we wouldn't be looking at duress. We would be looking at by means of force and violence. He was not convicted of use of an ax. I know the government put that in there by signing to the PSR. The discourse present is the PSR is not an available document. Is the charging document – what does the charging document allege? I know it doesn't mention an ax. I think it just says California Penal Code 26182. It spells out all the elements. And the change of plea form, which is not in the appellate record, but the district court record, was silent as to anything you could use of the modified prior oracle approach. And I just want to lastly point to this court's decision in Valencia. I know Judge Beha was on that opinion. In footnote 3 of that case, and that was a 16B residual clause case, said we have to – the court has to examine the full – all the conduct encompassed by the statute. There, that was a statutory rape case and said we had to look at defendants that were a day shy or victims that were a day shy of their 18th birthday. But that could have been consensual in Valencia. In this case, the statute specifically says against the victim's will. I agree. My point is, in that case, the court wrote that you have to view all the conduct encompassed by the statute. So you have to consider a victim that's a day short of 18 and a defendant that's a day short of his 21st birthday. So while that might not be the ordinary statutory rape case statistically, it's still covered by the elements. I would like to reserve the rest of my time for rebuttal. Thank you. May it please the Court. Good morning, Your Honors. Owen Mardekin of the United States. The district court in this case properly denied the motion to dismiss because the defendant had been convicted of an aggravated felony, and this was ineligible for relief from removal. There was an aggravated felony for two reasons, because it was rape and because it was a crime of violence. Given the Court's interest, I'd like to start with the crime of violence issue. Because I believe this Court is bound by two decisions, at least two, the first being Sandoval-Oriana, a 16B case, because the Court says there very specifically that sexual penetration, and, in fact, through psychological coercion, that's the phrase that the Court uses, is precisely the type of felony, I'm quoting now, that by its nature brings with it a substantial risk that physical force will be used during the course of the offense. It's at page 1179 of that opinion. Second of all, Valencia v. Gonzalez. In that case, this Court said on page 1050 in a 16B context, nonconsent of the victim is the touchstone for determining whether a conviction constitutes a crime of violence under 16B. And those cases both harken back to Riley, which is a guidelines case, but a similar issue. And the Court says the close proximity of two people basically having sexual intercourse when one of them doesn't want to and is also afraid of the other person creates an atmosphere that fosters the potential for physical confrontation. So this Course, at least since 1999, has very consistently recognized that this kind of contact, this kind of offense, falls squarely within the 16B notion of crime of violence. Could you address whether this, and I know the words get used differently, so let me define them, whether this is elementally a crime of violence, in other words, whether it can never be committed without violence? It would seem to me that because rape involves penetration and it hasn't been consented to, that even if the perpetrator causes that crime to occur through nonviolent means, duress or otherwise, the actual crime itself is a crime of violence and we don't need to go past the elements. Isn't that what we said? Yes. That's exactly the point that the Court made. It's the nature of the crime. It's not the means by which it is perpetrated, but the actual elements of their crime require the entering of another without that person's consent and that's violence. Yes, in this case against that person's will. Correct. So I believe that the decision is simply here on that issue is controlled by that precedent, Your Honors. I'd like to talk about rape as well. Now, and to begin with, I'd like to talk about the framework, the statutory framework, Taylor and this Court's decision in Corona-Sanchez because I think that is grossly misread, especially in the reply brief where the appellant argues that Corona-Sanchez creates this somehow different test where we look at common law to reach a decision and that's not what Corona-Sanchez said at all. In Corona-Sanchez, this Court said common law may be the starting point, but it is not the ending point. That's on page 1205. And the Court says it's not the ending point because if it were, we'd be violating Taylor because Taylor says we don't look at the arcane distinctions of the common law. We look at what the crime is in contemporary usage under modern-day conditions. So given that framework, Corona-Sanchez doesn't take us off in a different direction. Corona-Sanchez says, well, there are certain common law crimes. You start off by looking at them, but then you look at how they've evolved based on just the kinds of factors that Taylor suggested, what states do, what commentators say, what the Model Penal Code says. As this Court said in Rodriguez-Guzman, which talks about Corona-Sanchez, and most recently in the Garcia-Santana case. But getting that framework aside to talk about rape specifically, there are three cases from this Court, Castro-Baez and Llanos-Cecedo being the two published ones, that look at Black's Law Dictionary, one cites the other, to show that rape has evolved beyond simple brute force to notions of non-consent. So Llanos-Cecedo said that third-degree rape fits within a generic contemporary definition of rape. Yes. And is the third-degree rape in Washington seems to suggest could be done without force. It could be done just with trickery. So to what extent is that decision applicable here? Are we bound by Llanos-Cecedo on the rape issue? Well, I don't think Llanos-Cecedo goes far enough to actually bind this Court. But both of the cases are going in the direction that this Court recognized in Mendoza v. Holder, which is the unpublished decision, so also not necessarily binding. But the Court says, well, what those two cases mean is that rape encompasses the victim's non-consent, sexual penetration of the other person without that person's consent. That's what that means for purposes of determining what rape is. And to go beyond this Court's cases, that's really what Lefebvre is recognizing, what the Model Penal Code recognizes. Lefebvre says in the article that is actually helpfully attached to the reply brief, he says on page 31 of the reply brief submission, it is necessary to take brief note of just how far legislative reforms have encompassed coercive impositions beyond the traditional force requirement. He goes on and cites, I'd say, over 40 cases in the footnote, or 40 State statutes in the footnote, including California's 261, that extend rape beyond physical force. So what's the difference between trickery and duress, to go back to Judge O'Keefe's question? Well, what is the difference? Yeah. I mean, I think we've suggested that a statute that involves trickery may not involve violence. And you're saying duress does. So tell me what the difference is. In duress, under the definition of duress in the California statute, the person, the victim in the case, always knows what's going on. They know that their will is being overcome through the entire act. Under trickery, the victim may not know. Under the sort of law school-type trickery example, there's an evil twin of the husband of the victim. They're having sex. The victim may never realize that. Perhaps there's the potential for that realization that might make it a crime of violence, but it's broader than the idea of duress in the California statute, where the victim is afraid the entire time because the victim always knows there's this threat of force, this other ‑‑ Is it your position under the California statute a prostitute who receives counterfeit money has been raped? The California statute, this ‑‑ the part of the California statute that we're talking about would not criminalize that. Fraud is actually not part of the duress definition or of section 2 of the California statute. So no, the statute doesn't go that far. It stays within what I think is the wheelhouse of what this Court says is nonconsensual rape. So this statute, in your view, doesn't cover trickery? The California statute does not. It does not go that far as I read it. Your reading of duress would not include your law school textbook example? It would not. There might be another statute that the defendant could be charged under, but not this one? Correct. In fact, the definition of duress, most of the adjectives in that definition are talking about force, fear of force, fear of danger. What about the case opposing counsel cites, I think, where the people are tricked into having sex in order to keep their loved ones out of jail? I mean, that was just pure trickery, right? It was trickery, but it was also fear of retribution. And it's interesting for a couple reasons that he cites that case. First, because this Court discussed it in the Ruiz-Apollonio case and looked at the facts and said, well, that's not an unreasonable fear. Because one of these victims, for example, her husband was a police officer, and she had a reasonable fear he was going to be killed in prison. So they had that fear. They weren't being – I mean, they were being tricked, but they were also being – their force, their will was being overcome by fear of retribution. So that's what brings it within the statute, not trickery per se. Another interesting point about the unreasonable fear argument is that Lefebvre actually says in this article that's attached that he, in conjunction with the model penal code authors, actually believed that unreasonable fear – that fear doesn't have to be reasonable. Now, the California – it's not so much an issue in this case because the California statute requires reasonable fear. But Lefebvre does say, well, you know, this is kind of like a fraud case where the victim is tricked by a fraudster when they should have known that. Does it have to be fear of violence, of physical violence, or can it be fear of economic retribution? The retribution does not need to be of physical violence, the way that the statute is written. That is true, yes. And so your argument has to be that the ordinary case involves violence, doesn't it? The ordinary case involves the fear of violence. But to jump back to the – to what this Court was talking about in Sandoval-Ariana, the Court recognizes psychological coercion also raises a substantial risk under 16b. Because during the act, the person could rescind their consent. Well, because they're afraid and they may – they want to defend themselves. Because a substantial risk if the victim changes her mind that could result in violence. Yes. So I think the district court was correct to deny the motion to dismiss and could have also done it because the crime was a crime of violence. I'm willing to submit. Thank you. Thank you very much. Bubba. Thank you. To respond to Your Honor's question, Judge Hurwitz, regarding that duress covers rape without consent, it's my position, based on the case that Judge Akuda cited, People v. Minsky, these victims are consenting, but it's based on the coercion and duress. But it is nevertheless consensitive. Second, I just want to raise a larger picture argument. Under this Camps and Taylor, there is an ever-increasing importance on the documents that are generated in a state change of plea process and then at an immigration proceeding. Because the amount of documents that an immigration judge or a sentencing judge can look at are very limited. And they're basically limited all to documents. And I think that it puts more importance on sentencing judges and prosecutors to have what element of the statute someone is convicted of. And in this case, there was no judicial – the modified categorical approach. Do you think this is a divisible statute? Yes, Your Honor. And the result of this was the defendant in this case, Mr. Solano, was deported. But he was also deported through a truncated removal proceeding, expedited removal and never had his day in immigration court, never saw an immigration judge. And I think that creates great danger. We need a decision like this to make sure that sentencing judges and the change of plea forms have more information. The record doesn't reflect this, and I don't think. I'm asking you if it is in the record. Does the record reflect what defense Mr. Solano would have raised in a non-truncated deportation proceeding? He would have requested – I'm speculating.  Okay. Thank you. Thank you.
judges: BEA, IKUTA, HURWITZ